Bernard B. Spindel v. Commissioner.
Spindel v. Commissioner
Docket No. 2668-64.
United States Tax Court
T.C. Memo 1965-164; 1965 Tax Ct. Memo LEXIS 166; 24 T.C.M. (CCH) 869; T.C.M. (RIA) 65164; June 22, 1965
Bernard B. Spindel, pro se, RD # 2, Holmes, N. Y. Charles M. Costenbader and Robert D. Whoriskey, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Additions to tax
Sec. 6651(a)
Sec. 6654(a)
I.R.C.
I.R.C.
Year
Deficiency
1954
1954
1957
$4,348.00
$1,087.00
$117.50
1958
5,342.25
1,335.56
145.28
1960
1,055.85
At the trial respondent conceded that there were no deficiencies in tax or additions to tax for the years 1958 and 1960, *167 leaving for decision the following issues with respect to the year 1957: (1) What were the total amounts received by petitioner directly or through payments made on his behalf during the year 1957 from his codefendants in a criminal prosecution or from others at their direction, and whether the amounts so received were income to petitioner or loans? (2) What was the total amount of expenses paid by petitioner during the year 1957 directly relating to the criminal prosecution? (3) What amount did petitioner receive as fees in connection with certain electronic services performed, and what expenses, if any, are properly chargeable against such fees? Findings of Fact Although there was no written stipulation of facts, certain facts were orally stipulated at the trial and are found accordingly. Petitioner, an individual who during the calendar year 1957 resided with his wife and five children in Holmes, New York, did not file an income tax return for either of the years 1957 or 1958. Petitioner is an electronics technician. During 1953 he performed work at the request of James R. Hoffa involving the installation of electronic microphones for remote control monitoring, and *168 for this work received a fee of approximately $9,800 which was paid to him by check of the Teamsters Union. On May 14, 1957, a Federal grand jury indicted petitioner, James R. Hoffa, and Owen Bernard Brennan for wilfully conspiring to violate Section 605, Title 57, United States Code, which is commonly referred to as the federal wire tapping law. The indictment involved the work petitioner had performed at the request of Hoffa in 1953. A trial under this indictment was commenced on November 21, 1957, and continued through December 19, 1957, resulting in a mistrial because the jury was unable to agree on a verdict. A second trial on this indictment commenced on May 20, 1958, and continued through June 23, 1958, resulting in a verdict of acquittal with respect to petitioner and the other two defendants. Since the indictment charged conspiracy, the three defendants conducted a common defense even though petitioner had his own attorney representing him. None of the defendants testified at the trial in 1957. During the year 1957 petitioner received a total of $13,700 in cash from or at the direction of Hoffa and Brennan. In addition $4,500 was paid during 1957 to his attorney by or *169 at the direction of Hoffa and Brennan, making a total of $18,200 paid directly to petitioner or on his behalf at the direction of Hoffa or Brennan during the year 1957. Thirty-five hundred dollars of the amount which petitioner received was handed to him by Ralph La Ponzina in a brown bag. La Ponzina was a client of petitioner for whom petitioner had testified in a trial as an expert witness. Petitioner had been advised that he would be contacted and given additional funds and he was contacted by La Ponzina who delivered the package to him containing $3,500. The currency in the paper bag which La Ponzina handed to petitioner was comprised of $10, $20, and some $50 bills. Petitioner did not count the money in La Ponzina's presence or give La Ponzina any receipt for the funds. Petitioner has never executed a note evidencing any indebtedness to anyone for the money that La Ponzina delivered to him in the paper bag. It was petitioner's understanding that this money came from Brennan. In September 1957 petitioner met with Hoffa and an attorney by the name of Fitzgerald who was representing one of the codefendants. At or after this meeting Fitzgerald handed petitioner $5,000 comprised *170 of 10, 20, 50, and 100 dollar bills. Petitioner signed no receipt for this money and has never signed a note of any kind. During the course of the trial from November 21 through December 19, 1957, petitioner received from Hoffa various amounts in cash totaling $3,000. Petitioner signed no receipt for these amounts and gave no note to anyone for them. Petitioner's attorney during the trial in 1957 was Harris Steinberg. Steinberg was paid $4,500 for legal services rendered to petitioner, $2,500 of which was paid by check from Sol Gelb, who was Hoffa's attorney and the balance was paid by someone other than petitioner at the direction of Brennan. Brennan was handling expenditures of funds in connection with the common defense. During 1957 petitioner made a trip to Binghamton, New York regarding a Government witness, Rudolph Doelicke. About the time that petitioner made this trip to Binghamton he received an amount of at least $2,200 in cash. Holmes, New York, where petitioner resided, is approximately 75 miles from New York City. Petitioner made 24 trips from his home to New York, returning the same day, in connection with the preparation of the criminal trial during the year 1957. *171 In connection with preparation for the trial and the trial, petitioner spent at least 50 nights in hotels in New York and made 20 round trips at various times when he stayed in New York overnight. On these trips petitioner drove a 1953 or 1954 Cadillac automobile which was registered in the name of a corporation, Intelligence Technical Agency, Inc. This corporation had been formed by petitioner and another in late 1955. Petitioner personally paid for the gasoline and incidental expenses on the car including parking fees when he drove the car from Holmes to New York City and return. On his trips to New York City petitioner incurred expenses for food for himself and on some occasions paid the food bill of his attorney and of certain witnesses. The total expenses incurred by petitioner in 1957 in connection with the defense of his criminal trial were $7,538.91 composed of the following items: Hotel expenses
$ 190.25
Bail bond
105.00
Transportation - American Airlines
65.01
Defense expenses
221.30
Legal fee - Esmond W. Moriarity
250.00
Legal fee - Harris B. Steinberg
4,500.00
Automobile expense (20 round trips)
125.00
Automobile expense (24 round trips)
150.00
Meals on one-day trips
114.10
Meals on overnight trips
753.75
Telephone expense
300.00
Parking fees and taxicabs
328.75
Trip to Binghamton
55.00
Copies of documents obtained in Bing-
hamton
38.75
Investigation of jurors
250.00
Copies of file
92.00
$7,538.91
*172 During 1958 legal fees in the amount of $10,000 were paid to two attorneys on petitioner's behalf and petitioner received certain amounts in cash directly at the direction of either Hoffa or Brennan. In late 1955 or early 1956 Intelligence Technical Agency, Inc., was caused to be incorporated by petitioner. Approximately $25,000 was paid into that corporation, about $13,000 of the amount being used to apply against property. The $25,000 was derived from loans to the corporation and for a portion of the amount petitioner signed a personal note and was authorized by the corporation to use such amount as he deemed necessary including use for personal purposes. In the early part of 1957 petitioner kept no accurate record of work performed or expenses incurred by the corporation as distinguished from himself personally. On May 24, 1957, petitioner was authorized by Theodore J. Hlavaty to install monitoring equipment in the telephones in his home. The charge for the services including the tapes and other supplies, as well as the rental of the equipment was $300. Expenses incurred by petitioner or Intelligence Technical Agency, Inc., in connection with electronics work during the *173 year 1957 were at least $300. During the year 1957 petitioner received a fee of $75 for testifying as an expert witness for Ralph La Ponzina. Petitioner is entitled to credit for dependency exemptions in the year 1957 for his wife and five children. Respondent issued a notice of deficiency to petitioner for the years 1957, 1958, and 1960 on a so-called "short form statement." The only facts shown therein were the amounts of deficiency and additions to tax for failure to file a return and failure to substantially prepay estimated income tax liability. A preliminary letter issued to petitioner and an agreed schedule offered at the trial show that respondent's determination of petitioner's income tax liability for 1957 was on the basis of income of $18,575, composed of the following: Unreported compensation of $18,200 which amount consisted of $5,700 received from Ralph La Ponzina, $5,000 received from George Fitzgerald, $3,000 received from James R. Hoffa, and $4,500 legal fees paid to Harris B. Steinberg; and fees for electronic services of $375 consisting of $75 from Ralph La Ponzina and $300 from Theodore J. Hlavaty. Respondent allowed no deduction for business expenses but *174 did allow a standard deduction of $500 and dependency exemptions for seven of $4,200. Ultimate facts During the year 1957 petitioner received total income of $18,275 and incurred total business expenses of $7,538.91. The $300 billed to Theodore J. Hlavaty by either petitioner or Intelligence Technical Agency, Inc., was offset by expenses in at least that amount so that no net income resulted to petitioner from any work done for Hlavaty. Petitioner is liable for additions to tax under sections 6651(a) and 6654(a) of the Internal Revenue Code of 1954. Opinion Respondent at the trial specifically stipulated that the prosecution brought against petitioner arose out of actions in connection with petitioner's trade or business and that petitioner is entitled to deduct as business expenses all items in connection with his defense that were incurred and paid by him in 1957 and is entitled to the standard deduction with respect to any income remaining after deduction of such expenses. Petitioner at the trial admitted receipt of a $75 fee from Ralph La Ponzina and admitted that either he or the corporation Inteligence Technical Agency Inc., was paid $260 *175 of the total fee of $300 charged in connection with work done for Theodore Hlavaty but contended that this amount was completely offset by expenses of his or the corporation's electronics business. Petitioner admitted receipt of $3,500 delivered by Ralph La Ponzina at the direction of Brennan, the receipt of $5,000 handed to him by Fitzgerald, and the receipt of $3,000 from Hoffa. He took the position, however, that all of these funds were loans made to him. Petitioner also admitted that his attorney, Steinberg, was paid $4,500 by others but testified that he did not consider this to be a loan but did consider it to be a deductible item if it were determined that the payment constituted income to him. Petitioner denied receiving any funds from Ralph La Ponzina at the direction of either Hoffa or Brennan other than the $3,500. Considering the evidence as a whole, we have concluded that petitioner did receive additional funds from Ralph La Ponzina at the direction of Hoffa or Brennan and have sustained respondent's determination that the total amounts received by petitioner from or at the direction of Hoffa or Brennan including the payment of attorneys' fees on his behalf was $18,200. *176 The evidence shows that in late 1958 petitioner contacted an investigator for the Senate Select Committee on Improper Activities in the Labor Management Field (commonly referred to as the McClellan Committee and hereinafter so referred to) and handed him a paper on which he wrote amounts that he had received from or at the direction of Hoffa during 1957 and 1958, the total of such amounts being $34,600. The first item on this list was $2,500. Petitioner told the investigator to whom he was talking that he had received two payments from Ralph La Ponzina, one of $2,500 and another of between $3,200 and $3,500. He told this investigator that the first payment given to him by Ralph La Ponzina had been sent to him by Hoffa since Hoffa had asked him to investigate the background of a Government witness and that he would have some expenses in connection with the investigation. Petitioner himself testified with respect to a trip he made to Binghamton, New York, regarding this Government witness and stated that he had some expense in connection therewith. Petitioner in his testimony was vague with respect to amounts received from Ralph La Ponzina. He stated that he couldn't remember the date *177 because it had been so long ago that he just did not recall when he received the first payment that "It is very remote in my mind. It is something that I would prefer to forget rather than to remember." Furthermore petitioner testified that he received a total of approximately $25,000 during 1957 and 1958 whereas the total of the amounts petitioner admitted receiving including the payment of his attorneys' fees is more than $25,000. If the amount of the attorneys' fees of $14,500 which petitioner admits were paid on his behalf ($4,500 in 1957 and $10,000 in 1958) is subtracted from the amount of $34,650 which petitioner wrote on the paper given in 1958 to the investigator of the McClellan Committee, the remaining amount is $20,150 or more than $2,200 less than $25,000. When petitioner contacted the investigator for the McClellan Committee he told this investigator that he had met with Hoffa in Washington at which time Hoffa had discussed the payments which had been made to petitioner during the criminal trial. Petitioner stated to the investigator that Hoffa had wanted him to report $21,000 of these payments as income on his individual returns. Petitioner further stated to the investigator *178 that he had refused to report the amount as income unless Hoffa would pay the approximately $6,200 income tax which would result from these amounts being reported. Petitioner told the investigator that he and Hoffa had had an argument over Hoffa's request that he report $21,000 as income. Again, if the $14,500 of attorneys' fees paid on petitioner's behalf is added to $21,000, the resulting amount closely approximates the amount of $34,950 which respondent determined petitioner received in the 2 years 1957 and 1958 and is not greatly in excess of the amount of $34,650 which petitioner wrote on the piece of paper as being received by him in 1957 and 1958 at Hoffa's direction. All of these facts indicate that petitioner did in fact receive a total of $5,700 in 1957 in addition to the $3,000 he received directly from Hoffa and the $5,000 handed to him by Fitzgerald. It is possible that the first amount paid to petitioner was paid to him for some form of service and was not viewed by petitioner as being in the same category as other payments he received. However, the only service which has in any way been connected with this payment by the evidence is petitioner's trip to Binghamton *179 to investigate a witness and we have concluded that he did expend the amounts which he testified he spent in connection with that trip. It is petitioner's position that all of the amounts he received were loans. He testified that some $2,800 to $3,200 of the amounts had been paid back to either Hoffa or someone on behalf of Hoffa in years subsequent to 1958. Petitioner said that he transmitted $2,800 to Hoffa through Hoffa's personal secretary and that he made one small payment to Hoffa when he saw Hoffa in Chicago. Although petitioner insisted that he viewed the amounts as loans, he testified he gave no receipts for the amounts and gave no notes to anyone. He stated that he had never paid any interest on the amounts and that he never agreed to pay any interest. Petitioner further testified that he did not know the source of the funds that he was receiving and when asked to whom he thought he owed the amounts he was given, replied: Well, Mr. Bert Brennan, Mr. Hoffa, and I owe - well, for 1957, Mr. Brennan, Mr. Hoffa. Those are the only two for 1957. Well, the original amount was Mr. Hoffa, three thousand dollars; Mr. Fitzgerald - I'm sorry; I was in error. Mr. Fitzgerald gave *180 me five thousand dollars in 1957, which funds came from Mr. Brennan; the thirty-five hundred dollars that was transmitted through Mr. LaPonzina came through Mr. Brennan. As far as I know, the three thousand dollars that Mr. Hoffa gave me either came from him or Mr. Brennan. I have no personal knowledge. He stated that he had not been sued by Brennan's estate for the funds but he did not consider the loans discharged but considered he owed them to Brennan's former wife. Considering the evidence as a whole, we conclude that the $18,200 paid directly to petitioner or on his behalf during 1957, except to the extent that the first payment was in part for services which petitioner was to render, were amounts supplied petitioner for his personal living expenses and to be used in his defense of the criminal charge. Since the charge was of conspiracy there was a mutuality of interest among the defendants. We therefore conclude that the amount constituted income to petitioner from which petitioner is entitled to deduct his expenses in connection with the trial as ordinary and necessary business expenses. The question of the amount of deductible expenses also presents a factual issue. *181 Respondent at the trial conceded that petitioner incurred and paid in 1957 the amount of $190.25 as hotel expenses, $105 as bail bond, $65.01 transportation by American Air Lines, $221.30 of other defense expenses and $250 legal fee to an attorney by the name of Moriarity in connection with his appearance before the Grand Jury, a $4,500 legal fee to Steinberg who was his attorney at the trial, and $1,500 of other expenses. Petitioner testified that in addition to the specific expenses conceded by respondent he had expenses of $6,879.44 and not of only the $1,500 which respondent conceded. Petitioner testified these expenses were comprised of the following: Automobile expense (20 round trips)
$ 300.00
Automobile expense (24 round trips)
360.00
24 lunches and 13 dinners
114.10
56 days of food expense
944.00
Telephone expense
725.34
Parking fees and taxicabs
328.75
Trip to Binghamton
55.00
Copies of documents obtained in Bing-
hamton
38.75
Investigation of jurors
250.00
Witness fees
2,500.00
Transcript fees (2,343 pages at 50
cents)
1,171.50
Copies of file
92.00
$6,879.44 Petitioner figured his automobile expense on the basis of 10 cents per *182 mile. Petitioner did not own the car which he drove to and from New York, but the car was owned by the corporation Intelligence Technical Agency, Inc. However petitioner paid for the gasoline and other incidental expenses. We have concluded that petitioner incurred and paid expenses as set forth in our findings of fact. We have found no amount of expenditures by petitioner in 1957 for witness fees and transcript fees. We have found lesser amounts in some instances than the amount claimed by petitioner. In connection with the automobile trips we have estimated from the evidence the amounts we considered petitioner expended for gasoline and other out-of-pocket expenses and we have made an estimate of the meal expenses on the basis of the number of days petitioner was in New York and his testimony in general of the times his attorney or some witness accompanied him to meals. We have estimated the telephone expense from the telephone bills placed in evidence and petitioner's testimony as to calls from toll booths. The telephone was listed in the name of the corporation Intelligence Technical Agency, Inc., but petitioner's testimony was that he paid for the calls in connection with the *183 trial and we have attempted to estimate these calls on the basis of the telephone bills which are in evidence which do not appear to be the complete bills for the year 1957. Considering the evidence as a whole we have concluded that petitioner did not pay any witness fees or transcript costs in 1957 out of the $18,200 which has been included in his income for the year 1957 or out of any other of his personal funds. Petitioner testified that the amount for transcript costs was paid to Brennan who, petitioner said, "made the arrangements for me to get the transcripts in the first place, and he was the man who I insisted make the transcript available, and it was to him that I paid it." Petitioner said that these payments were made during the second week of the trial, the fourth week of the trial and towards the conclusion of the trial. Petitioner testified that he did not recall when the amount for witness fees was paid to Brennan "but it was sometime during the five weeks of the trial." Petitioner's contention that during the year 1957 he made these payments out of the funds which were given to him in cash or out of other funds of his own is not reconcilable with petitioner's testimony *184 of his need for funds for payment of expenses and that this was the reason for the payment to him of the various funds which he stated came from Brennan. Petitioner also testified that the payment of a portion of his attorneys' fee to Steinberg was made "through Mr. Brennan, one of the co-defendants here who was handling the actual expenditure of the funds." Petitioner in explaining the payments made to him which he understood to come from Brennan or Hoffa stated: "Not having funds, and recovering from a long series of illnesses over five years including two years of paralyzation, I had no funds to properly defend myself on my own. They had promised that they would assist me by loaning me money or making arrangements for loans, whichever the case may be." Considering all of this evidence, we have concluded that if petitioner was furnished with a transcript by Brennan and any witnesses fees were paid on his behalf that the payments for such transcript and witness' fees were from other funds supplied on petitioner's behalf by Brennan and were not actually amounts paid by petitioner to Brennan in cash. Since no amount has been included in petitioner's income because of payment of transcript *185 costs or witness' fees and since we conclude on all the evidence that these amounts were not paid by petitioner out of amounts which we have included in his income or out of other of his personal funds, we conclude that petitioner is not entitled to a deduction for these items. The final item is the $300 fee which respondent added to petitioner's income as received from Theodore J. Hlavaty for work done for him. Petitioner testified in respect to this item that in the early part of 1957 when this work was done, the only activity involving the corporation was services which he performed that he didn't know whether to perform as an individual or as the corporation. Petitioner offered in evidence a number of bills, many of which were in the name of the corporation showing expenses in the electronics business in excess of $300. We have concluded that the expenses in connection with petitioner's or the corporation's electronics business exceeded the $300 charged for the work done for Theodore J. Hlavaty and that therefore this $300 should not be included in petitioner's income. Because of the confusion of the record as to whether the items of expense were those of the corporation or of *186 petitioner, we have determined that petitioner has failed to prove any expenses in connection generally with this electronics business as distinguished from the expenses of defending himself in the criminal trial in excess of the amount necessary to offset the $300 of income. On the basis of all the facts of record we have concluded that petitioner had income of $18,275 in 1957 and business expenses deductible as such from this income of $7,538.91 leaving net income of $10,736.09 with respect to which petitioner is entitled to the standard deduction of $500. Respondent agrees that petitioner is entitled to personal exemptions of $4,200. Respondent in his brief makes an argument that petitioner's tax should be computed on the basis of a single individual and not a joint return, and petitioner makes no counter-argument but apparently accepts this. Petitioner's only justification for failure to file a return is that he did not consider that he had $600 of income in 1957. Under all of the facts of this case we do not think petitioner has sustained the burden of showing that respondent erred in his determination of additions to tax under section 6651(a) and section 6654(a), and *187 therefore hold that these additions to tax are proper and are to be recomputed on the basis of the deficiency to be determined under a recomputation in accordance with this opinion. Decision will be entered under Rule 50.